[No. 22384.   Department One.   September 22, 1930.]

E. R. McCaw, *as Executor, Appellant,* v. Advance-
Rumely Thresher Company, Incorporated,
*Respondent.*[1]

*H. B. Noland,* for appellant.
*Williams & Cornelius,* for respondent.

Tolman, J.—This action was commenced by E. N.
McCaw during his lifetime, but, while it was pending,
McCaw died and the executor of his estate was sub-
stituted.

[1]Reported in 291 Pac. 319.

In the original complaint, which was verified July 23, 1928, it was alleged that, in May, 1926, McCaw purchased from the defendant two 1926 model Hillside Combine harvesters of its make, paying a certain amount in cash and giving his three notes for $1,400 each, due October 1, 1926, and annually thereafter, the first of which had been duly paid. Certain warranties by the defendant were pleaded, and it was alleged these were breached in that the machines proved, upon trial, to be defective and insufficient, and that the defendant failed to furnish, without charge, new and improved parts to take the place of those which failed and wholly refused to comply with its written agreement to furnish improved 1927 parts in place of those found to be inefficient. It is alleged that the plaintiff was specially damaged in this respect in the sum of $1,666.

General damages are also alleged without any amount being claimed therefor, and the prayer is for an accounting between the parties, that plaintiff's damages be offset against the unpaid notes and that he be permitted to pay the balance without further costs or interest. Thereafter, an amended complaint was filed in which it was alleged that the machines were wholly worthless, that the plaintiff had been obliged to cease attempting to use them, to his further damage in the amount of the whole purchase price. The allegations as to general damages were also greatly enlarged, and the prayer was for a judgment of $6,871 over and above the amount of the unpaid notes.

To this complaint an answer was interposed consisting of denials and a counterclaim, and a cross-complaint was filed seeking judgment on the two unpaid notes and the foreclosure of a chattel mortgage

on the machines given to secure the purchase money notes.

The plaintiff then filed a reply and counterclaim in which he greatly enlarged all of the allegations of his amended complaint as to damages, and prayed for special damages in the sum of $6,033.20 and interest, less the amount of the unpaid notes and for general damages in the sum of $5,191.36 and for costs.

The case was tried to the court sitting without a jury, resulting in a judgment and decree denying any relief to the plaintiff, granting judgment in favor of defendant on its cross-complaint for the amount of the two unpaid notes with interest, for $400 attorney's fees, and directing a foreclosure of the chattel mortgage. From this judgment, the plaintiff has appealed.

In addition to the outline of the issues already given, it seems necessary to say that the machines were sold and purchased under a written contract containing the usual iron-clad features generally used in selling agricultural machinery, from which contract we quote:

"Said machinery is warranted to be well made and of good material, and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions, but any machine or part thereof not manufactured for or by vendor, or which is second-hand, rebuilt or repaired, is not warranted by law or otherwise.

"Purchaser shall not be entitled to rely upon any breach of above warranty or to rescind this contract or to any claim or set-off against the vendor because of any breach, unless: (a) Notice of the defect or breach, particularly describing the same and specifying the time of discovery thereof, is given by registered letter addressed to vendor at its head office, posted within four days after such discovery; (b) Such defect or breach appears within ten days (10) after the first use of the goods; (c) The vendor fails to remedy such defect or breach by substitution of parts or otherwise within a reasonable time after receipt of such notice,

which substitution it shall have the right to make. Purchaser shall render necessary and friendly assistance to vendor in and about remedying the defect. If vendor fails to remedy the defect, purchaser shall immediately return the defective goods or parts in as good condition as when received by him, reasonable wear excepted, to the place from which they were received, and shall thereupon give vendor immediate notice of such return by a registered letter, addressed and mailed to vendor at La Porte, Indiana, and also to its branch office in the territory where said goods were sold. Thereupon the money paid and security given by purchaser on account of the purchase price of the machinery or parts returned will be promptly returned by vendor, and vendor shall be released from all further and other claim. To return the goods or parts in the manner aforesaid after full compliance with all the foregoing conditions, and to so recover the money paid or security given, shall constitute the sole and exclusive remedy of the purchaser, and under no circumstances shall the vendor be liable for special or other damages of any kind or character suffered by the purchaser whether growing out of the use, inability to use, or attempted use of said goods or parts, or from any cause whatsoever. Failure so to return the goods or to give the aforesaid notices shall operate as an acceptance of said goods and fulfillment of this warranty in all and every particular. . . . No attempt by vendor or its representatives to remedy any defects shall be deemed a waiver of any of the provisions hereof, and if a mechanical expert visits the machine and does not leave it working properly, purchaser shall give immediate notice in writing or by prepaid telegram to vendor at its head office, stating specifically the failure or neglect complained of.''

In addition to the printed matter, from which we have quoted, the contract bore two typewritten riders as follows:

''This machine is sold under a written warranty and for the purpose of introducing in the territory this additional agreement is made; If after a fair trial in

the field not exceeding ten days, the Advance Rumely harvester fails to do the work for which it is sold as well as any other similar machine working in the same locality and under the same conditions, notice of such failure shall be given to the Advance Rumely Thresher Company of the purchaser's intention to return it for breach of warranty, but the purchaser may if he desires continue to operate said machine thereafter until his crop is harvested or until he has had opportunity to procure another machine to take its place, and when so. returned to the Advance Rumely Company all money, notes, and settlement papers given in settlement therefor shall be returned to the purchaser.''

''This machinery is sold under and pursuant to the terms of a written warrant. But as an additional warranty, the Advance Rumely Thresher Company agrees to replace or repair free of charge any parts that break or give way during this first season's operation, by reason of any defect or on account of being too light. Breakage or damage by reason of accident or carelessness excepted. And it is further agreed; That in case changes are made on the 1927 Model of Rumely Hillside Harvester for the reason that any parts of the 1926 machine are unsatisfactory, weak or defective, said changes will be made on this machine without charge.''

According to the appellant's witnesses, trouble developed as soon as the machines took the field, and respondent's experts and repair men were present pretty much throughout the 1926 harvest season, adjusting, repairing and using their best endeavors to get the machines to work properly. No notice of the failure of the machines was given in writing, and none was sent to the respondent's home office.

■ We think it fair to assume that, by the typewritten rider first quoted, and by the course of dealing with and through the experts and local agents, the strict terms as to written notice were waived, and that if, after ten days' trial, or such further time as the promises to correct the defects might induce, the pur-

chaser had given oral notice to the local agent, or perhaps to the experts in the field of an intention to reject and return the machines as soon as the then crop was harvested, that might have been sufficient; but we find no evidence of any notice of an intention to reject, either oral or written, and no offer or attempt to return the machines, at any time prior to the filing of the amended complaint in this action, if that can be construed as such a notice.

After using the machines to harvest the 1926 crop, the purchaser paid the note due October first of that year, which of itself would seem a sufficient election to accept the machines. So, clearly, on the record here, we must hold that the purchaser accepted the machines, and cannot now claim a breach of the warranty as to their condition and capacity when they were delivered to him.

■ There remains the typewritten rider last quoted, which, apparently, was relied upon when the original complaint was filed. As to repairs during the first season's operations, we find no evidence of any breach. So in that respect the special warranty has been fully performed. The second part of that warranty reads:

". . . And it is further agreed; That in case changes are made on the 1927 Model of Rumely Hillside Harvester for the reason that any parts of the 1926 machine are unsatisfactory, weak or defective, said changes will be made on this machine without charge."

Whether this part of the warranty has been performed is a question of fact only. The trial court, by his judgment, necessarily found that it had been performed or that there were no changes in the 1927 model made for the reason that parts of the 1926 model proved to be unsatisfactory, weak or defective. A

careful study of the evidence convinces us that the 1927 changes were all made with a view of lessening the cost of manufacture or for like reasons, and that none of them made any substantial change in the strength of the machines or the results to be obtained in operating them. By reason of the judgment denying a recovery upon respondent's counter claim of $121 for 1927 parts furnished, it has in any event furnished parts to that extent. If, in some minor particulars, we might assume that the 1927 changes strengthened and bettered the machine, still, as to those, there is no evidence in the record which offers a basis for fixing the amount of damage suffered by the purchaser through the failure to receive the benefits of such changes.

The judgment appealed from is affirmed.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.